Good morning, Your Honor, and may it please the Court. The District Court dismissed this case essentially because the claims involved had been finally resolved or would necessarily be resolved by the State Court in the Aurora litigation. The former justification is incorrect, and the latter is an insufficient basis for declining to exercise federal jurisdiction. On the race judicata issue, the District Court's reliance on a partial summary judgment as the basis for race judicata was problematic under the circumstances as they existed at the time. But we know now that it can't stand because the State Supreme Court has determined that the partial summary judgment in this case was not final and was not subject to certification for interlocutory appeal. The City argues that you have to put on blinders and ignore what has happened in State Court. That's not correct, and it doesn't comport with common sense either. You aren't required to ignore reality, and you aren't required to give the partial summary judgment in federal court more weight than it has today in State Court, which is that it's not final. When this court is faced with the question of race judicata, a decision of another court is a proper subject for judicial notice. That's true whether that decision was handed down before your appeal got underway or while your appeal in this court was pending. One of the cases cited by the City, in fact, makes this point. Well, then, you make the argument that they can't raise race judicata because it wasn't planned. It can't be planned if it doesn't occur until after the lawsuit is filed. Well, Your Honor, in federal court, I think if we're talking about entirely federal court actions, I think that would be the case. But, in fact, Missouri precedent is that in a situation just like this where one party is plaintiff in one case, the other party is plaintiff in the other case, if it is not raised immediately that there is a claim splitting going on, it is weight. The Joel Bianco case held that several years ago in Missouri Supreme Court, and this court held in the Klipsch case that in this scenario, state law of race judicata and claim splitting controls. It is a little counterintuitive. I don't think it would play out that way if both actions were in federal court here necessarily, Your Honor. But because Missouri principles apply, that is the rule, Joel Bianco, the waiver rule. But we don't even need to get to that, I would suggest, because of the finality issue. In the Meyer case that I mentioned, the district court abstained under Colorado River. While an appeal was pending here, a state court entered a final judgment confirming an arbitration award between the same two parties. This court took judicial notice of that development and affirmed on the basis of race judicata never getting to Colorado River. So if we were to find that abstention applied, would we need to get to the race judicata question? If you were to find that the district court properly abstained, you would not need to get to the race judicata question. That is correct, Your Honor. So I am prepared to address both of those issues today, and would, of course, be happy to answer any questions on whichever subject you have as I proceed forward today. The city suggests that what we're trying to do here with the state Supreme Court's decision is equivalent to submitting an affidavit for the first time on appeal and saying, look, the judge got summary judgment wrong. He overlooked these facts. That's not what we're doing. It's not remotely comparable to that. What we're talking about is here is a decision of a state court. It directly undermines the race judicata argument that the district court used to dismiss our case. It is appropriate to take judicial notice of that. Otherwise, as I mentioned, you're giving greater weight to this partial summary judgment than the state courts themselves do, and that's inconsistent with the general full faith and credit principle that governs here. It is clear, I think, that a partial summary judgment that is not certifiable for appeal is not preclusive. The Committee for Educational Equality case established that in 1994 in the state Supreme Court. A decision must be final and not interlocutory to service the basis for race judicata. Like this case, Committee for Educational Equality involved a judgment that was certified for interlocutory appeal, and the state Supreme Court rejected the certification, and it held it is not preclusive, and that controls here. The city has cited a few cases that suggest that a non-final decision can be preclusive in some respects. Those need to be looked at closely. For example, the Cromalloy case is a good example of that. In Cromalloy, the petition was dismissed for lack of personal jurisdiction. It was dismissed without prejudice, and in Missouri, a dismissal without prejudice ordinarily is not appealable. However, the court, the state Supreme Court, recognized that it's not possible to amend around that defect. It's not possible to file a new petition in Missouri State Court against that same defendant because it's not subject to personal jurisdiction. So the remedy is that the plaintiff was permitted to appeal that dismissal without prejudice, even though an appeal would not normally be permissible. The city draws from that the conclusion that spectra is bound by the decision, even though it could not appeal because the state Supreme Court said we could not appeal. That is not a tenable conclusion from Cromalloy in similar cases. They haven't cited any case that said we may not appeal and we are bound. That sort of catch-22 is not permissible under the cases that they cite or any other case that we're aware of. Since the Supreme Court acted, the city has pivoted its arguments a little bit to talk about what I refer to as interlocutory claim splitting. Claim splitting, when I think of claim splitting, I think of just a variety of res judicata. You have a final judgment, and then anything else that should have been part of that same claim is done. But there are a few cases in Missouri where the courts have dismissed a pending claim merely because a similar claim was pending in another court. It's difficult to rely on those here for a couple of reasons. First of all, the full faith and credit statute talks about giving effect to a judgment of a state court, giving it the same effect in a federal court that it would have in a state court. When we're talking about two claims that are merely pending, there's no judgment to give full faith and credit to. The other problem with relying on these claim splitting cases is that the federal courts already have a body of law that deals with parallel litigation in the federal court and state court, and it's abstention. It's the other issue that we're here to talk about today. If Missouri interlocutory claim splitting cases control and require dismissal of our case, the abstention doctrines, and particularly the limitations on the abstention doctrines requiring extraordinary circumstances, etc., they become meaningless. There's nothing left of Colorado River if a federal court can dismiss a claim merely because a similar claim is pending in a state court. So as to Colorado River, there's detailed analyses in the parties' briefs about the six-factor test and the various precedents. Certainly, Your Honor. Can you answer one question specifically about that without getting into all the factors? Is there an issue that's raised in the federal litigation that has not been or cannot be decided in the state court? I don't think there is, Your Honor. So in that sense, everything that's in federal could be decided in the state. Now it's just a question of whether it should be. I think that's correct. I think we have parallel litigation, as that term is used in the Colorado River cases. We have parallel litigation. The first big-picture point I think we need to consider is that federal claims generally belong in federal courts. Moses H. Cohn made that very, very clear. Federal claims must always be a major consideration weighing against surrender of jurisdiction to a state court. Second, an interpretation of Colorado River that permits a state or local actor to drag federal claims into state court will cause mischief. Well, on that issue, let's say that we agree that the district court got it right about the 253 analysis. Does that then mean there is no effectively any federal claim we need to worry that much about in state court? No, I don't think it does, Your Honor. If you were to agree that the 1983 claim does not survive, there is still the declaratory and injunctive aspect of Section 253. So there still are federal claims in this case, even if 1983 is not. So if the city is able to draw these federal claims into state court and get the federal litigation dismissed, if that works here, it works when a city official refuses to grant a permit to an unpopular speaker or a county sheriff's deputy roughs up a suspect during an arrest using excessive force. There's an opportunity there for the state or local official to file in state court asking for a declaration that I didn't do anything wrong, I didn't violate anybody's rights, not mentioning any federal rights, just I didn't violate anybody's rights. There is effectively then a compulsory counterclaim by the injured individual. You're at least taking a serious risk if you don't counterclaim in state court that that claim could be barred. And then when the federal suit comes along eventually, we hear about Colorado River abstention, and the federal case gets dismissed. But doesn't that really go to our standard of review? It seems to me that if I understand correctly, and tell me if I'm wrong, we review the Colorado River abstention decision as whether it was an abuse of discretion. Correct. So now, it seems to me those parade of horribles that you've listed in your brief are issues that we would maybe say, well, in this situation where it's clearly an excessive force claim and the only state hook is, well, somebody asked for a declaratory judgment that they weren't liable. Yeah, that might be, if they would abstain, that might be an abuse of discretion. But it seems to me that we're kind of mixing the analysis here. Well, Your Honor, I think if you were to decide that Colorado River abstention is appropriate in this case, that doesn't mean that every district judge would have to abstain when one of those scenarios arose. Yeah, it might not be an abuse of discretion if he hadn't abstained. In this case, it might not be an abuse of discretion. Yes, I mean, this could be one of those cases where an abuse of discretion is a pretty wide standard. And you could argue that, you know, it's not an abuse of discretion to abstain. It's not an abuse of discretion not to abstain. That's why we call it discretion. Well, you certainly could make those arguments. I think this is perhaps different from your garden variety abuse of discretion review because the governing standard is so heavily weighted in favor of federal jurisdiction. You have extraordinary circumstances test in Colorado River itself. You require the clearest of justifications before declining federal jurisdiction. Both Colorado River and Moses H. Cone make that clear. Counsel, doesn't this case bring up the specter of piecemeal litigation if it's not all kept in one court? Your Honor, I don't think this really is a piecemeal litigation case. The examples of piecemeal litigation cases, think of Colorado River itself. You have a small dispute in federal court over water rights involving a few parties. In state court, you have 1,000 parties involved. So there's piecemeal litigation there because a small piece of the overall dispute could be resolved in one court, and you're still going to have to fight about it in the other court. But isn't that the case here with the state claims? I don't think it is the case here. I think there is a very high probability that whichever of these courts reaches a true final judgment, that preclusion law will take care of the claims in the other case. So it's not piecemeal litigation in the sense that that term is normally used in the Colorado River cases. It is parallel litigation. There's no question about that. But parallel litigation, it happens all the time. And that's what preclusion law and the full faith and credit statute take care of. Parallel litigation gives a federal plaintiff at least the opportunity to get to judgment in federal court before a state or local official gets to judgment in a local court and bars everything that's going on in federal court. There's no guarantee that the federal plaintiff gets to judgment first. But there's at least a fighting chance that if I have a federal claim, I can go to a federal court, even though the defendant is in state court trying to get to judgment first. I think Judge Malone may have asked this question, but just for clarification or clarity on my part, is there any remedy you seek that you couldn't get in the state court? I don't believe there's any remedy that we're seeking that's not available in state court. Certainly there's nothing that's subject to exclusive federal jurisdiction, for example. That's not this case. There's also younger abstention in this case, as your honors know. The Aurora litigation in state court fundamentally is an attempt by the city to expand its revenues at the expense of Spectra. It's not a criminal proceeding, and it's far from the core of quasi-criminal proceedings that we now know from the Supreme Court's Sprint decision is the core of the younger abstention doctrine. How many years have the city and Spectra been fighting? How many years have they been fighting? Well, the litigation began in state court in 2012, and there were, as I understand, some out-of-court disagreements before that. I don't have an exact date about when the disagreements first arose, your honor. But the litigation in state court began in 2012. The litigation in federal court did not begin immediately. I used the race to the courthouse analogy a moment ago. This isn't actually a race to the courthouse. Spectra didn't go to federal court until the city began to use its permitting requirements and its fees to try and force Spectra to capitulate in the state court litigation. So there was actually six months of litigation in state court before Spectra went to federal court and said this is a violation of Section 253. You are telling us effectively to get out of Dodge unless we pay all the taxes that you're demanding that we don't think we owe. But now that two cases are pending, there is an argument that it is a race to judgment. But that's permissible. That's part and parcel of our dual court system that absent extraordinary circumstances, absent the clearest of justifications for relinquishing federal jurisdiction, both cases can remain pending. And then when one goes to judgment, the other has to respect it to the degree required by preclusion. Which horse is leading? Well, they're probably, in very broad brush terms, they're probably relatively even, your honor, at this point because the parties went to the Missouri Supreme Court, that took a bit of time. There are summary judgment proceedings pending in state court right now to be heard near the end of the year and possibly subject to continuances, of course, in the ordinary course. In this case, the parties were approaching close of discovery and trial when the district court dismissed and abstained. So if we go back to Judge Whipple's courtroom, I think it's fair to say that the horses are neck and neck or within a length or two of one another. Are these parties at such loggerheads that a settlement of the company's obligations to the city is completely out of the question? I don't know that I can say that it's completely out of the question, your honor. A settlement might simplify everybody's lives, of course, and it's just a question of whether the parties see the issues the same way or in similar enough ways that a settlement is possible. You've been fighting for quite a while. It has been quite a while, your honor. That's correct. For younger analysis purposes, let me make sure I understand what sort of none of the dispute is about. Sure. As I understand it, it's the city charges spectra of a fee based or a tax or whatever you want to call it based upon revenue, is that right? Gross receipts, yes. Gross receipts. That's right. And there's a dispute about what's included in gross receipts. I know maybe even a dispute about what the percentage should be. And then they also want to charge spectra a fee to attach your lines to their telephone poles or utility poles. And also underground or otherwise in the right of way. Which do you dispute that you have? It seems to me our level three communications case says the city can charge a reasonable fee. There are a couple of issues there. One is a state law issue about whether it's permissible under state law and how it's calculated. So that's clearly a state law issue. That's clearly governed by state law. And then the parties have disputed whether various state laws are constitutional under the state constitution. But as a matter of federal law, you're correct, your honor, there is the possibility. It wouldn't violate Section 253 to charge a reasonable fee for the use of the right of way. The question is when you get to the point of using that tool to try and force capitulation in litigation. Or for the more extreme case, when you demand that a telephone company take its wires down from all city-owned poles. I thought they said in their briefing that they told you that you could keep them there and we'll just do it under a standstill agreement. There was an agreement. And you were the ones that said, no, we want this resolved. The city has described what they offered as a reservation of rights. We disagree with that characterization. Early on there was a discussion about whether this could be done under a reservation of rights. I think it's fair to say that if it had been a true, full reservation of rights, that that might have been possible. The terms in the agreement as they were offered, we did not think were fairly characterized as a reservation of rights, your honor. Counsel, do you concede your claim on the right of action for a federal claim? You didn't address it, and I assume that maybe there's a problem with the notice of appeal. We don't concede that, your honor. We'll have to rely on our brief because of the timing issues. But we think it's well explained in our brief why that is a valid cause of action under Section 1983. I see that I've eaten well into my rebuttal time. I'd like to reserve the little bit I have left, if that's okay. Thank you. Thank you. May it please the Court. I'm David Struble, and I represent the appellees. In this case, Spectra is really arguing for a substantial expansion of federal jurisdiction in ways that I think are quite remarkable. It seeks the ability of a party to split its causes of action and litigate the very same claims in two different courts at once, in federal court and state court. Well, let me ask the reverse of what I asked Mr. Walsh. Is there any reason why all of these claims couldn't be litigated in federal court? They could all be litigated in the federal court, your honor. So there doesn't have to be a splitting of claims. They could all be litigated in one form or the other. Absolutely, Judge, except that, of course, here the first filed court was the state court. And both you and Judge Smith had the question. The law is really clear that there is concurrent jurisdiction over the 253 declaratory judgment claim that's count one of their petition. So the state court was certainly competent to hear all of the claims that Spectra now asserts. And just so I'm clear, because we really didn't talk about the 253 claim with opposing counsel. 253A, which is the 1983 claim, they want actual money damages from the city. Is that right? 253C, which I think everybody concedes they do have a right to bring a claim under that. They just want a declaration that what you're doing is wrong. Don't do it anymore. That's correct, your honor. Okay. But we're not in one court. We're in two. And so even though we started out in state court and the state court was undoubtedly competent to hear and resolve all the claims between the parties, Spectra opted to expand the litigation to federal court. So as a result, the very same issues were now before two courts. And as a result, the cost of the litigation for the Cameron taxpayers skyrocketed. And also as a result, the potential for inconsistent rulings, both big and small, would pervade the cases. And as the court know, those are big and small decisions. It's not always just a dispositive motion. But as the cases progress in two different forms, there are lots of little pretrial rulings every day that run the risk of being inconsistent. Things aren't discovery. What's relevant? What's discoverable? How is it going to be discoverable? What about privilege claims? How are you going to resolve those privilege claims? Do you have to produce an index to preserve your claims? All those things run a risk of rubbing up against each other and being inconsistent. Well, did either court manage it actively? Did manage the case actively? Yes. I think both courts did to some extent, but not in a way that would minimize the inconsistent rulings. I mean, of course, as a trial judge, you have to deal with the case that's before you. And so I think it would be difficult. And, in fact, I think both judges found it difficult to say, well, Judge, hang on. This got considered in the other court, and this happened. And so it's difficult for a judge to completely defer when he wasn't apprised of the very same situation. Generally, the claims are the same, sure, but that decision is nuanced, I think. If the court sanctions Specter's claim-splitting tactic, the consequences, I think, expand far beyond this case. Parties, at least those that can afford it, will routinely split their claims and play the federal court against the state court, as Specter has done here, to hedge their positions. And if there's a disparity in resources, like there is here, the well-heeled litigants are going to split their claims to escalate the cost of litigation to oppress their poorer opponents. So, of course, claim-splitting is prohibited. And that is independent of the state court judgment and res judicata. It's also independent of abstention considerations. And it is clearly a basis for res judicata in federal court. There's no question that claim-splitting provisions prevent simultaneous claims, even before a judgment in both courts, for obvious reasons. You have exactly the situation that we're faced here with. We're faced with multiple lawsuits on the very same issue. We're using the resources of two courts. We're causing litigants to fund two litigations, and for no reason, because the first- But what's your position on does Spectra state a 1983 claim? I'm sorry, Judge Murphy? Does Spectra validly state a 1983 claim? No, no, it didn't, Judge, for several reasons. Spectra claims that the text, structure, and legislative history of the Telecommunications Act show that Congress intended for 253 to confer enforceable private rights. And, of course, the law after Gonzaga in 2002 is clear. No court to examine whether or not a telecom company's rights under 253 or revenue under 1983 have concluded that they are. I think the text is clear. The text is, other circuits have found when they looked at the text of the statute, it's much different than Title VI and Title IX that Gonzaga looked at. Title VI and Title IX both say no party shall be subject to discrimination. Here, 253A talks about some constraints on what state and local governments can do. And so that's not the individually focused, right-creating language that the Supreme Court demanded in Gonzaga. And even later in Rancho Palos Verdes. The structure of 253 is also inconsistent with that. The Fifth Circuit and the Tenth Circuit have both looked at the structure of the statute and decided just that. I do want to say something about the legislative history that Spectra relies on. Reliance on legislative history isn't sanctioned by the Supreme Court as a way to decide if there is a private right or a right remediable in 1983 in a federal statute. It's not the sort of clear and unambiguous evidence that a court should look at. There are legions who are opposed to construing any federal statute by resorting to legislative history primarily because it's uncertain. Legislators and even the executive also just often insert their personal views in legislative history or bill signing statements. And I think Justice Scalia is probably at the vanguard of those. He had an interesting quote in a 2004 case, Intel Corporation versus Advanced Microdesigns. There was a claim there under a federal statute after a European antitrust claim as to whether or not Advanced Microdesigns could resort to discovery in this country to resolve that claim. Justice Scalia looked at the statute and concurred in the result but said, as today's opinion shows, the court's disposition is required by the text of the statute. He thought it was improper to look to a Senate committee report which, he said, as far as we know, not even the full committee, much less the full Senate, much, much less the House, and much, much less the President who signed the bill agreed with. Or even read. Yes. So, no other court has resorted to legislative history to look to see whether or not a right under 1983 is remediable in a federal statute. The Tenth Circuit did look at the legislative history here in the Quest case and found that there's nothing in the legislative history to indicate that a private right of action, remediable under 1983, existed. So, the court was correct in dismissing that claim, Judge Murphy. What happens if we just say the district court was right to abstain? Do we need to get to the 1983 issue? No. Only on my cross appeal for attorney's fees, Judge. Okay. But, no. Those are alternative dispositions to this case. Okay. Alternative. Well. The result is the same. There are alternative rationales, I suppose I should say. And the district court, or excuse me, the state court has already ruled that there's not a 1983 claim, right? Right. Now, that's the whole issue of the res judicata, but that's, you know, assuming that's not final. You won't concede that. But, assuming that's not final, that's still subject to further litigation in the state court. But, as of today, the state court's Rule 253A does not provide a private right of action under Section 1983. The federal court's done the same thing. Yes, sir. But, if we abstain, it's the same result. It is. And I think it's important to note that Specter is going to get their day in court here. They're just going to be in the court where this started. So, if the court affirms the district court's dismissal of their claim, they're going to go back to state court. I'm certain they will try and convince the state court to change its mind about the partial summary judgment. I don't think that's going to be successful, but then one of two things will happen. One, the court will change its mind about the summary judgment, and the litigation is going to progress through state court. Or, two, the court won't change its mind about that partial summary judgment. The rest of the case will be litigated and decided, and then Specter will have its appellate rights in state court. So, it will certainly have its day in court, but just one court, not two. Can I ask you, I don't want to get you off your argument, but on the abstention issue, I think I understand the Colorado River, but this seems like kind of an aggressive use of younger abstention, because at the core, it's really almost like a contract dispute between the city and Specter as to what's old. It's an ordinance, but what number do you use to apply the percentage for the fee or the tax, whatever you want to call it? Why does this fit under essentially what Younger was talking about, trying to prohibit a criminal prosecution? Well, it's a civil enforcement proceeding, judgment-wise, and the cases are clear that when you have a state actor or a local government trying to enforce its laws through a state court, that that is a basis for mandatory abstention under Younger. And so, it doesn't have to be just criminal. A civil enforcement proceeding is sufficient for Younger abstention, and I think that is the difference between a private contract suit and a branch of government trying to enforce its laws. I would like to talk, unless the panel has any more questions, I'd like to move to my cross appeal, if I may. There was no basis for Specter to assert a Section 1983 claim, even once, much less twice. The reasons it provides for doing that really make no sense. The law was clear that if a claim is dismissed with prejudice, you don't have to replete it. There's no basis in the federal rules for pleading with an asterisk. Saying that, well, this is just to preserve our rights on appeal. If you put a claim in a complaint, everyone's got to deal with it. As Specter well knows, we can't just leave it there. We have to engage each count in a complaint. So, we have to move to dismiss. And if we had been unsuccessful, presumably Specter would have conducted discovery on those issues. And I don't know how the court would have dealt with it. But it caused Cameron to have to deal with it, and it caused the court to have to deal with it. And there was absolutely no basis under the current law to think that you had to reassert a claim that had been dismissed to preserve your appellate rights. The cases that Specter cites are really much different. None of those cases deal with a claim that had been dealt with on the merits. So, I would suggest that what Specter intended to do, as it has throughout this, is to game the system. For years now, Specter hasn't paid its taxes that are due under Cameron's ordinances and lots of other cities. The state court determined that Specter had committed a willful violation of those taxing ordinances. Are they paying the amount that they claim is not in dispute? They are paying some amount under protest. And the adequacy of those payments is a matter of dispute within those individual cases. The Missouri law requires each of those cases to be filed where the collector of revenue is.  One of the issues that Mr. Walsh said is that in Colorado River, there were multiple parties in the state court litigation, only one party in the federal litigation. How many municipalities are litigating with Specter in the same lawsuit that you're involved in? There are five. So, it's not just the city of Cameron? No, there are four others, Judge. So, did Specter file four separate federal lawsuits, then, against the four different municipalities? Or why did you draw the short straw? I can't. Well, I'd have to speculate about that, Judge. But I think, for one, Specter identified an opportunity to sue Cameron for the right-of-way issues. And I don't think it foresaw the state court judge finding that Cameron's right-of-way code was valid and legal and enforceable under state law and any other law. What's really the history between these two parties? Because it seems like there would be an interest for them to be able to cooperate on this. Well, it's not just between these two parties. The state court litigation, I think, is the ninth iteration of telecom litigation, where cities have sued various telecom companies for nonpayment of their gross receipts business license taxes. All those cases had resolved and settled. This one has not yet. And, frankly, I'm a little puzzled why. But we'll see how we do. Unless the panel has any questions. Thank you. Mr. Walsh, how much time does he have? One minute and 15 seconds, Your Honor. We'll give you two minutes. Thank you. I'll try and be brief. The first point is parallel litigation is not itself an extraordinary circumstance. And I respectfully disagree with Mr. Strobel in his argument that claim splitting is impermissible, per se. Claim splitting becomes significant after one of the cases reaches a final judgment. Wholly within the Missouri system, there are cases where courts have dismissed one claim merely because another one is pending. Of course, those cases can be consolidated, or the petition in one case can be amended to pick up whatever was missing. But just putting aside race judicata, it's sort of intuitively unsettling to have the state courts say you don't have a 1983 action under 253A, and then the federal court being expected to say, oh, yes, you do. Then what do you do? Race to the appellate court? Well, in the most complicated of situations, I suppose that might be the answer. That's not the most complicated. That's this situation. The state court said no 253A action, and you're saying to the federal court, oh, yes, there is. We want you to rule that there is a 253A action. Well, I should clarify that. The state court said there's no 253 action after Judge Whipple said there's no 253 action, and because Judge Whipple said there's no 253 action. It was not an independent determination. It was a judgment on the pleadings on the basis of race judicata to the extent that alleviates that concern somewhat, perhaps, Your Honor. But if there are two cases in state court, claims splitting while they're both still pending may be a viable doctrine. If there are two cases in federal court, claims splitting while they're both pending may be a viable doctrine. Those can be consolidated as well. But we've seen no authority cited that one claim in state court, one claim in federal court, the federal court must dismiss simply because that other claim is there. We need Colorado River. We need Younger. We need Burford. We need some other doctrine to get to where the city wants to get to. I will add briefly on legislative history. If you look at the Gonzaga opinion at page 290, you will see the Supreme Court referring to the congressional record as it tries to figure out what the purpose of FERPA was. I should clarify it was to a subsequent enactment added to FERPA after the initial statute was enacted. But the Supreme Court looked at legislative history. As to the other issues, I'll have to rely on my brief. Thank you. Thank you both. We'll move on then to the second case.